# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2051-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DIXON J. VILLATORO,
a/k/a DIXON VILLATORO
RODRIGUEZ,

    Defendant-Appellant.

_____

Submitted June 3, 2026 – Decided July 29, 2026

Before Judges Gooden Brown and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Accusation No. 09-06-0465.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the briefs).

Jennfier Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Robert A. Polis, II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, Dixon J. Villatoro, appeals from a February 20, 2025 Law Division order denying without an evidentiary hearing his petition for post-conviction relief (PCR) in which he claimed plea counsel was ineffective for providing allegedly "affirmative misadvice" concerning the immigration consequences of his conviction of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a).  He contends the PCR court erred in finding his petition—filed fourteen years after conviction—time barred.  Specifically, defendant claimed he demonstrated both excusable neglect for the delay and that fundamental injustice would result from enforcing the time bar, contending, but for plea counsel's failure to accurately advise him deportation was a virtual certainty, he would not have pled guilty.[1]  Having reviewed the record in light of applicable legal principles, we affirm.

I.

In 2008, police questioned defendant after then twelve-year-old L.C.[2] reported defendant engaged in acts of oral and vaginal sex with her.  Defendant

---

[1] We note defendant's merits brief indicates "defendant is deported."

[2] We use initials to protect the victim's privacy interests.  R. 1:38-3(c)(9), (12).

A-2051-24

initially admitted his conduct, but claimed he believed L.C. was older though admittedly under eighteen.

On June 1, 2009 defendant waived indictment by a grand jury and pled guilty to an accusation pursuant to a plea agreement to a single count of third-degree endangering the welfare of a child by engaging in sexual conduct which would impair or debauch the morals of a child, N.J.S.A. 2C:24-4(a)(1). Defendant was later sentenced to credit for time served and parole supervision for life, with Megan's Law reporting. Defendant never appealed his conviction.

Defendant pled guilty after a lengthy colloquy with the court, although we recognize the record of the plea is marked throughout by intermittent breaks in audibility.[3] Despite the incomplete recording, significant portions of the proceeding were captured. Specifically, defendant acknowledged reviewing and executing the written plea form after reviewing each question with his attorney. He averred the answers on the form were his. First expressing his understanding of his rights to remain silent and to trial by jury, defendant acknowledged, in

---

[3] The plea transcript contains a "Note," indicating the "recording is of extremely low quality/clarity with the attorneys and defendant barely audible," with "sound cut[ting] out" at times throughout. We summarize from the audible portions of the hearing reflected in the official transcript defendant's pertinent representations to the court. Like the trial court, we do not view the omitted portions as impacting the ability to adequately decipher the record for purposes of evaluating defendant's arguments.

pleading guilty, he was waiving those rights. Defendant advised he had no questions, no one "force[d]," "threat[ened]," or "otherwise coerce[d him]" to plead guilty, and agreed he was "satisfied in [his] own mind that [he was] guilty of the crime to which [he was pleading]."

Defendant represented he understood the terms of his plea agreement and agreed he would notify the court if he did not understand something during the plea hearing or if he heard "something different from what [he] believe[d] or what [he was] told by [his] attorney." The court emphasized the information placed on the record at the hearing would control, "not what [defendant] or [his] attorney may have previously discussed."

Notably, defendant's written and signed standardized plea form reflected defendant was not a United States citizen, and the answer "Yes" was circled in response to the question, "Do you understand that if you are not a United States citizen or national, you may be deported by virtue of your plea of guilty?" At the plea hearing, the trial court expressly asked whether defendant understood he faced possible deportation, and defendant acknowledged his understanding. Specifically, the hearing record reflects the following exchange:

> THE COURT: —that you pleading guilty to this charge may impact your ability to stay in the United States?
>
> THE DEFENDANT: Yes, sir, I—

A-2051-24

THE COURT: —that issue with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Are there any questions on that? Does that impact your desire to plead guilty at all today?

THE DEFENDANT: (Indiscernible)

THE COURT: Okay.

When asked whether he had "a chance to review the facts for this case with [his] attorney" and whether he was satisfied with his attorney's services, defendant replied "Yes." The court asked defendant whether he needed more time to speak to anyone about his plea, including "family or friends," and defendant replied he did not.

Defense counsel elicited the factual basis from defendant. Defendant specifically admitted to "ha[ving] sex" with L.C. The court then inquired about the voluntariness of defendant's plea:

THE COURT: . . . . Sir, I and now your counsel have asked you some questions in a yes/no format today. As a result of this, do you feel the court or anyone else has forced you to give answers that you believe to be untrue?

THE DEFENDANT: No, sir.

THE COURT: Sir, I am satisfied you're guilty based upon what I've heard. Now, with everything that I've

5

said and what you've heard here today, do you still want me to let you plead guilty?

THE DEFENDANT: Yes.

THE COURT: Are you pleading guilty, because you are guilty?

THE DEFENDANT: (Inaudible)

THE COURT: And not because of some promise that has been made that I don't know about?

THE DEFENDANT: (Inaudible)

THE COURT: I am satisfied the defendant had the advice of competent counsel with whom the defendant is satisfied and entered a plea of guilty freely and voluntarily and that the defendant committed the offense on the date and place complained of in the indictment and he committed the offense as alleged.

The court expressly found defendant had "not been threatened to plead guilty or promised anything other than what was discussed . . . on the record," and accepted the guilty plea.

At sentencing on October 30, 2009, the court made its findings and imposed a sentence in accordance with the plea agreement. Defendant's immigration status was expressly noted several times during the hearing, with the court and counsel noting defendant would have been released on parole supervision for life that day if not for an "immigration detainer." Defendant's

counsel further stated, "[A]n immigration attorney is helping him with that, but this (indiscernible) finishes the matter." Defendant filed no direct appeal.

On November 27, 2023—fourteen years after his sentencing—defendant filed a self-represented PCR petition. His petition indicated that he was in "ICE[4] custody." In the section prompting the facts underlying his claim for relief, defendant stated: "I did not understand the plea. I was young and was not advised fully. I am now facing deportation again. I did not commit the crime."

Defendant thereafter filed a counseled brief and certification dated June 10, 2024. In his second certification defendant claimed "neither the court nor his trial counsel" properly advised him regarding the immigration consequences of his plea. He stated, the court misadvised him that pleading guilty "may impact [his] ability to stay in the United States," failing to advise a guilty plea "would lead to certain deportation." Defendant's certification also indicated, "if I had known that deportation was a certainty, I would not have accepted the plea and would have taken my chances at trial." The certification further stated his plea attorney told him that he would "have to wait and see what action the

---

[4] Defendant here is referring to the United States Immigration and Customs Enforcement.

immigration service took against [him], if any" and he "could address that after [his] plea with the help of an immigration attorney." Defendant requested the PCR court assist in recreating the "inaudible" parts of the record.

In his counseled brief defendant argued his petition, although not filed within the required five-year period, should be nonetheless accepted as timely. He alleged he did not understand the post-conviction appeal or PCR process, and the interests of justice necessitated a hearing on the merits as defendant was misadvised of the immigration consequences of his plea, or alternatively, the court should grant an evidentiary hearing to reconstruct the plea record. At oral argument, PCR counsel asserted defendant was "remarkably unsophisticated" and "immature" at the time of sentencing and never advised of his "post-conviction rights." Further, PCR counsel argued defendant's immigration hold after sentencing removed him from exposure to those "familiar with New Jersey law" who might have advised him regarding filing an appeal or timely PCR petition.

PCR counsel conceded defendant was sentenced "pre-Padilla,[5]" in which the United States Supreme Court first imposed the affirmative requirement upon criminal defense counsel to advise defendants of the precise immigration

_____

[5] See Padilla v. Kentucky, 559 U.S. 356 (2010).

consequences of a guilty plea. Counsel argued "there was enough case law at that time" to warrant the PCR court's finding a defense attorney should have advised defendant more adequately about the risk of deportation. Also conceding the judge told defendant he "may" be deported, PCR counsel asserted "it's not clear at all that he was told anything else or how serious the implications of what he was doing could turn out to be," and an evidentiary hearing was required to determine precisely the advice provided to defendant at the time.

As to timeliness, the State argued "[m]ere ignorance of the law is not a justification for inordinate delay in making a first [PCR] application." The State additionally asserted the five-year limit for making a PCR application should not be relaxed because there is no fundamental injustice in barring defendant's claim, as defendant admitted to having sex with L.C., who was twelve, and "faced first degree charges" if not for the plea agreement to a third-degree offense and "time served." The State added, "he's not being deported for this conviction now. He is being deported for unauthorized reentry into the country," and defendant "ha[d] enough context to have known this issue should have come up earlier than now." The State noted defendant's prior juvenile adjudications for burglary and assault by auto, demonstrating prior contacts with the justice system.

The State further argued the law at the time of defendant's plea as set forth by the Court in State v. Nunez-Valdez, 200 N.J. 129 (2009), placed no affirmative obligation on defense counsel to inform of collateral consequences, allowing relief only in cases of "misadvice" or "affirmative misrepresentations" regarding immigration implications, and reliance on Padilla was misplaced as Padilla does not apply retroactively. See State v. Gaitan, 209 N.J. 339, 371 (2012). The State argued, regardless, the trial court advised defendant of the risk of deportation. The State contended defendant's bald assertion that he would not have pled guilty had he known deportation was a virtual certainty was insufficient to warrant a hearing, particularly given the favorable "time served" sentence secured by the plea agreement negotiated by defendant's counsel.

The PCR court issued a written decision on February 20, 2025 denying defendant's PCR petition as untimely filed. The court recognized "[u]nder R[ule] 3:22-12(a)(1), a petition for post-conviction relief shall not be filed more than five years after the date of conviction." Citing Rule 3:22-12(a), the court noted a limited exception to the time bar exists in cases of "excusable neglect" when "enforcement of the time bar would result in fundamental injustice." Further, the court noted a defendant "must offer something more than a 'bare allegation'" supporting any claimed injustice, citing State v. Goodwin, 173 N.J.

583, 594 (2004). The court concluded that defendant's PCR petition was barred by the five-year limit imposed by Rule 3:22-12(a)(1), as his petition was filed "more than [thirteen] years" after he was convicted. Additionally, the court noted "[b]eing a [twenty]-year-old adult is not excusable neglect."

The court cited the well-settled Strickland[6] test applied to evaluate ineffective assistance of counsel claims. The PCR court then found the court addressed the deportation issue with defendant and "discussed possible immigration consequences on the record." The PCR court recognized parts of the recording were inaudible, but gleaned "enough audible text to rationally complete the transcription," citing defendant's "yes" responses to the excerpts of the trial court's questions: " . . . that issue with your attorney?" and " . . . that your pleading guilty to this charge may impact your ability to stay in the United States?" The PCR court then added, "Nevertheless, Padilla does not require retroactive application." Further, citing the "extreme burden" and prejudice to the State in the event of a retrial then fifteen years later, the PCR court denied defendant's petition.

---

[6] Strickland v. Washington, 466 U.S. 668, 687 (1984).

On appeal, defendant argues:

POINT ONE

THE PCR COURT ERRED IN FINDING THE PETITION IN THIS CASE TIME-BARRED.

In his reply brief, defendant offers the following:

POINT ONE

THE STATE'S BRIEF IS NOT BASED ON SUPPORTABLE EVIDENCE OR ARGUMENT.

In his merits brief, defendant reprises his argument before the PCR court, arguing the five-year limitation under Rule 3:22-12(a)(1) should not apply because defendant's circumstances warrant the exception under Rule 3:22-12(a)(1)(A). He argues imposing the time bar would be a fundamental injustice, as he was young and detained on an immigration hold after sentencing and "did not understand the process." Defendant contends he also presented "a colorable constitutional claim of ineffective assistance of counsel which should not be short-circuited by an overly strict imposition of the time bar." Specifically, defendant argues, even under Nunez-Valdez, 200 N.J. at 139-40, he is entitled to relief as he was given "affirmative misadvice" indicating only that he "may" be deported, when his deportation for his plea to an aggravated felony was actually "inevitable."

A-2051-24

The State counters the time bar exception does not apply here, as the delay is not excusable, and any mistake of law or lack of sophistication does not justify the delay. Further, according to the State, defendant did not show exceptional circumstances warranting relaxation of the temporal bar or establish the basis for a viable Strickland claim, falling short as to both counsel's alleged deficiency and the requisite prejudice. Specifically, as to prejudice, the State argues defendant offered only a bald assertion he would have gone to trial if he knew he faced deportation, emphasizing this was a negotiated agreement favorable to defendant who faced a first-degree aggravated sexual assault charge with strong evidence including his admission to police. The State further argues defendant never asserted he would have avoided deportation if not for his guilty plea, citing to his prior offenses.

In reply, defendant argues the PCR court never addressed the merits of defendant's Strickland claim, and the State's substantive arguments about the strength of the evidence against defendant and its references to unproven facts concerning the offense are therefore improper. Defendant thus contends, should we find his PCR petition was erroneously barred as untimely, we must remand to allow the PCR court to address the substantive ineffective assistance of counsel claim.

13

II.

We review a court's decision to deny PCR without an evidentiary hearing for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)). We review the PCR court's conclusions of law de novo. State v. Nash, 212 N.J. 518, 540-41 (2013) (citing State v. Harris, 181 N.J. 391, 415-16 (2004)). In the absence of an evidentiary hearing, we may review without deference "both the factual findings and legal conclusions of the PCR court." Harris, 181 N.J. at 421.

A PCR evidentiary hearing need not be granted simply upon request. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." Brewster, 429 N.J. Super. at 401 (omission in original) (quoting Marshall, 148 N.J. at 158).

To establish an ineffective assistance of counsel claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged analysis in New Jersey). "That is, the defendant must establish, first, that 'counsel's

14

representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688).

Importantly, "[a]lthough a demonstration of prejudice constitutes the second part of the Strickland analysis, courts are permitted leeway to choose to examine first whether a defendant has been prejudiced." Gaitan, 209 N.J. at 350 (citing Strickland, 466 U.S. at 697). Defendants "must do more than make bald assertions" to merit consideration. Cummings, 321 N.J. Super. at 170.

As a pivotal threshold matter, before a PCR petition can be substantively considered, it must be timely filed. Indeed, Rule 3:22-12(a)(1) mandates: "[N]o petition shall be filed pursuant to this rule more than [five] years after the date of entry pursuant to Rule 3:21-5 of the judgment of conviction[.]" The Rule states an exception to this strict time bar when a PCR petition "alleges facts showing that the delay beyond said time was due to defendant's excusable neglect and that there is a reasonable probability that if the defendant's factual assertions were found to be true enforcement of the time bar would result in a fundamental injustice." Ibid. (emphasis added).

As our Supreme Court emphasized, courts "should only relax the time bar of Rule 3:22-12 under exceptional circumstances." State v. Afanador, 151 N.J. 41, 52 (1997). To assess whether that high standard has been met, courts "should consider the extent and cause of the delay, the prejudice to the State, and the importance of the petitioner's claim in determining whether there has been an 'injustice' sufficient to relax the time limits." Ibid. (quoting State v. Mitchell, 126 N.J. 565, 580 (1992)). Further, "to succeed on a claim of fundamental injustice, the petitioner must show that the error 'played a role in the determination of guilt.'" Brewster, 429 N.J. Super. at 400-01 (quoting Nash, 212 N.J. at 547).

In the context of delayed PCR petitions based on misinformation regarding immigration consequences, we have recognized "[a] defendant cannot decide to remain intentionally ignorant of the legal consequences of his decision as a means of establishing excusable neglect." State v. Brown, 455 N.J. Super. 460, 471 (App. Div. 2020); see also State v. Merola, 365 N.J. Super. 203, 218 (Law Div. 2002), (noting "[i]gnorance of the law and rules of court does not qualify as excusable neglect"), aff'd o.b., 365 N.J. Super. 82 (App. Div. 2003). As we stated in Brewster, when we affirmed the trial court's barring as untimely the defendant's ten-year-delayed PCR petition rooted in flawed pre-Padilla, post

16

Nunez-Valdez immigration advice by plea counsel, "If excusable neglect for late filing of a petition is equated with incorrect or incomplete advice, long-convicted defendants might routinely claim they did not learn about the deficiencies in counsel's advice on a variety of topics until after the five-year limitation period had run." Brewster, 429 N.J. Super. at 400.

Here, defendant's PCR petition came fourteen years after his conviction in 2009, well beyond the five-year limit in Rule 3:22-12(a)(1). The substantial length of time beyond the five-year limit is particularly significant because, "[a]bsent compelling, extenuating circumstances, the burden to justify the filing of a petition after the five-year period will increase with the extent of the delay." Afanador, 151 N.J. at 52. Having reviewed the record and the PCR court's decision in view of controlling law, we are satisfied the court correctly determined defendant's PCR petition was fatally untimely.

Defendant alleged only that he "did not understand the plea," and that he "was young and was not advised fully." He contended plea counsel "was aware ICE placed a hold on [him] and advised [he] could address that after [his] plea with the help of an immigration attorney." He also certified that "if [he] had known that deportation was a certainty, [he] would not have accepted the plea and would have taken [his] chances at trial." Significantly, however, he certified

to no specific facts justifying his waiting fourteen years to take action or file his PCR petition.

As the PCR court similarly concluded, we view defendant's general references to his age of twenty at the time of his plea and his isolation from unnamed post-conviction relief advisors during his immigration hold after sentencing insufficient to meet the formidable showing necessary to vault the high temporal bar set by Rule 3:22-12 (a)(1).  Any arguable claim of excusable neglect is obviated by defendant's representations—both to the court and in his written plea form—before entering his plea that he understood he faced immigration consequences including possible deportation.  He also informed the court that he did not need to speak with anyone, was satisfied with his counsel's advice, and wished to move forward with his plea.

We also note his immigration detainer, identified at least by the time of sentencing, would or at least should have amplified for defendant the risk of deportation and alerted him to the need to at a minimum explore taking action had he been misadvised.  But here, defendant fails to certify to or advance facts sufficiently excusing his lack of diligence or delay in investigating viable post-conviction pathways to relief based on allegedly erroneous advice by criminal counsel.

18

Further, as <u>Padilla</u> did not announce a new rule of constitutional law and is not retroactively applied, <u>see</u> <u>Gaitan</u>, 209 N.J. at 371, counsel's alleged deficiency must be viewed under <u>Nunez-Valdez,</u> the controlling law at the time. Because <u>Nunez-Valdez</u>, 200 N.J. at 139-40, confirmed only affirmative misrepresentations by counsel—not failures to advise as to actual immigration consequences—we do not view a "fundamental injustice" in these circumstances and on this record replete with references to defendant's potentially perilous immigration status.

Nor do we find fault with the PCR court's noting the need for finality and the potential prejudice to the State. Indeed, the weightiness of these concerns is well-recognized:

> There are good reasons for [<u>Rule</u> 3:22-12]. As time passes after conviction, the difficulties associated with a fair and accurate reassessment of the critical events multiply. . . . Moreover, the Rule serves to respect the need for achieving finality of judgments and to allay the uncertainty associated with an unlimited possibility of relitigation. The Rule therefore strongly encourages those believing they have grounds for post-conviction relief to bring their claims swiftly, and discourages them from sitting on their rights until it is too late for a court to render justice.
>
> [<u>Brown</u>, 455 N.J. Super. at 470 (alteration in original) (quoting <u>State v. McQuaid</u>, 147 N.J. 464, 485 (1997)).]

Here, we are satisfied the court properly dismissed defendant's PCR petition failing to sufficiently demonstrate "excusable neglect" and "a reasonable probability that if [his] factual assertions were found to be true[,] enforcement of the time bar would result in a fundamental injustice." See R. 3:22-12(a)(1)(A). We further conclude the PCR court did not misuse its discretion in denying an evidentiary hearing, as we are convinced defendant made an insufficient showing, and no testimony was necessary to further inform the timeliness question.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division